## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:20-CV-00034-GCM

| | |
|---|---|
| RANDY WITHERS, **Plaintiff,** v. BMW OF NORTH AMERICA, LLC, **Defendant.** | **ORDER** |

**THIS MATTER** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (ECF Doc. 25), which was filed on March 18, 2021. Plaintiff Randy Withers filed his response (ECF Doc. 27) on April 1, 2021, and Defendant BMW of North America, LLC ("BMW") filed a reply (ECF Doc. 28) on April 8, 2021. This matter is now fully briefed and ripe for consideration. For the reasons stated herein, the Court concludes that the Motion should be denied.

## I.   BACKGROUND

This case arises out of Plaintiff's purchase of a used BMW passenger vehicle ("Vehicle") equipped with BMW's "N63" engine. Plaintiff contends that the N63 engine consumes an excessive amount of engine oil, and Plaintiff makes claims for breach of warranty and breach of implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act ("MMWA"), as well as breach of express warranties under N.C. Gen. Stat. § 25-2-313, violation of the North Carolina Unfair Trade Practices Act, and fraudulent concealment.

BMW filed a motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) in March 2020, and Plaintiff responded by filing an amended complaint (ECF Doc. 14) as of right.

BMW filed a motion to dismiss the amended complaint in April 2020 and, in response, Plaintiff sought leave of court to file a second amended complaint. The Court granted Plaintiff leave to amend the amended complaint, and Plaintiff filed the Second Amended Complaint (ECF Doc. 24) on March 4, 2021.

The present motion is BMW's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6). BMW argues the Court lacks subject-matter jurisdiction because the amount-in-controversy requirements for the MMWA and for federal diversity jurisdiction are not met. BMW also argues that Plaintiff's claims are barred by the applicable statutes of limitations, and the limitations periods were not tolled by any applicable tolling doctrine. BMW further maintains that Plaintiff failed to meet the pleading requirements for his claims of breach of express warranty, unfair and deceptive trade practices, and fraud.

Plaintiff opposes these arguments, contending the Court has diversity jurisdiction over the claims because the amount-in-controversy requirement is met where Plaintiff could be entitled to treble damages and attorney's fees for his unfair and deceptive trade practices act claim.[1] Plaintiff further argues his claims are timely because BMW fraudulently concealed the defect from Plaintiff, which invokes various tolling doctrines. Plaintiff also contends that he adequately pled facts to support his claims for breach of express warranty, unfair and deceptive trade practices, and fraud. Any additional relevant facts are set forth in the discussion below.

## II.    DISCUSSION

BMW has filed a Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), contending that the Court lacks subject-matter jurisdiction over this case and that Plaintiff has failed to state a

---

[1] Plaintiff does not argue that the MMWA amount-in-controversy requirement is met and has, therefore, waived such argument. As such, the Court will only analyze whether Plaintiff has met the amount-in-controversy requirement for diversity jurisdiction.

claim upon which relief can be granted. The Court must first address whether it has subject-matter jurisdiction.

### A. Rule 12(b)(1) Motion

Rule 12(b)(1) provides a defense for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When subject-matter jurisdiction is challenged, district courts have authority to determine whether subject-matter jurisdiction exists. *Chicot Cnty. Drainage Dist. v. Baster State Bank*, 308 U.S. 371, 376–77 (1940). The plaintiff bears the burden of proof as to subject-matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). District courts may consider evidence outside the pleadings, and "[t]he nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* A moving party should only prevail "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

There is no dispute that the issue as to subject-matter jurisdiction is whether the amount-in-controversy requirement for diversity jurisdiction is met. The amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a) (2018). An amount-in-controversy allegation typically "is accepted if made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). But "it must be clear from the face of the complaint" that the amount-in-controversy requirement is met. *Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 631 (4th Cir. 2007). Once a plaintiff has set out the amount, it must be a "legal certainty" that the plaintiff cannot actually recover the alleged amount in controversy. *See id.* at 631–32.

Here, it is undisputed that Plaintiff could only meet the amount-in-controversy threshold if Plaintiff may be entitled to treble damages. Treble damages are awarded automatically when a successful North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") claim is made.

*Am–Rail Constr., Inc. v. A&K R.R. Materials, Inc.*, No. 1:16cv520, 2017 WL 414382, at *3 (M.D.N.C. Jan. 31, 2017). Treble damages can be used to meet the amount-in-controversy requirement for federal court diversity jurisdiction. *Id.* (citing two other cases). Plaintiff pleads that the cost of his car repair may be as much as $15,000, and he has spent $5,038 on costs associated with the car's excessive engine oil consumption. When trebled, these economic damages equate to $60,114. Therefore, the UDTPA claim must survive BMW's Rule 12(b)(6) motion to dismiss for the amount in controversy to come near $75,000. This matter will be addressed in the next section.

Even if Plaintiff's UDTPA claim survives the Rule 12(b)(6) portion of BMW's motion, the Court must still consider whether Plaintiff could recover an attorney's fee award that would make the amount in controversy exceed the $75,0000 threshold. Pursuant to North Carolina statute, a presiding judge has discretion to award attorney's fees in a UDTPA claim. N.C. Gen. Stat. § 75-16.1 (2021). Here, to meet the amount-in-controversy threshold, the Court need only consider whether an attorney's fee award around $15,000 would be possible, and the Court concludes that it is.

Upon these considerations, so long as Plaintiff's UDTPA claim survives the Rule 12(b)(6) portion of this motion, the Court has subject-matter jurisdiction over the matter. *See Mitchell v. Marriott Int'l, Inc.*, No. 5:09–CV–00267–BR, 2010 WL 2231801, at *1–2 (E.D.N.C. June 1, 2010) (analyzing whether the pleading requirements for fraud were met so as to determine whether a request for punitive damages could be considered when examining the amount in controversy for jurisdictional purposes). For the reasons set forth in the next section, the Court concludes that Plaintiff's UDTPA claim should survive the Rule 12(b)(6) portion of BMW's motion and, thus, the Court has subject-matter jurisdiction over this case.

### B. Rule 12(b)(6) Motion

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may assert that the plaintiff failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Complaints need not give "detailed factual allegations," but a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action" or "labels and conclusions" to avoid dismissal under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must rise above a speculative level and complaints must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will "accept as true" all factual allegations. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Beyond arguing that Plaintiff does not plead his claims with the requisite particularity, BMW also sets forth several Rule 12(b)(6) arguments regarding the statutes of limitations on Plaintiff's various claims. Expiration of the statute of limitations is an affirmative defense that, ordinarily, is not properly addressed in a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Occasionally facts may be sufficiently alleged in a complaint to allow a court to rule on an affirmative defense in a Rule 12(b)(6) motion. *Id.* However, such facts must appear clearly on the face of the complaint. *Id.* Having set forth the relevant standard of review for Rule 12(b)(6) motions, the Court begins its Rule 12(b)(6) analysis with Plaintiff's UDTPA claim.

### 1. Statute of Limitations on Plaintiff's UDTPA Claim

The Court first addresses whether the statute of limitations expired prior to Plaintiff bringing his UDTPA claim. The statute of limitations for a UDTPA claim is four years after a cause of action accrues. N.C. Gen. Stat. § 75-16.2. A UDTPA cause of action accrues when the violation occurs. *Ferro v. Volvo Penta of the Ams.*, 731 F. App'x 208, 211 (4th Cir. 2018). For a UDTPA claim based on fraudulent conduct, the violation occurs "at the time that the fraud is discovered or should have been discovered with the exercise of reasonable diligence." *Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016) (quoting *Rothmans Tobacco Co. v. Liggett Grp., Inc.*, 770 F.2d 1246, 1249 (4th Cir. 1985)). The issue of due diligence is usually a question of fact for the jury, though failure to exercise due diligence may be a matter of law where there was clearly the capacity and opportunity to discover the mistake. *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp. 3d 609, 624 (W.D.N.C. 2014).

Plaintiff's UDTPA claim is based on BMW's purported failure to disclose the N63 engine valve defect. According to Plaintiff's Second Amended Complaint, he noticed within a few months of his August 8, 2015 purchase date that the Vehicle was consuming more oil than anticipated, to the extent that he had to add oil well before the recommended oil change intervals. On October 5, 2015, Plaintiff complained to the dealer about the low engine oil level alert coming on after driving the Vehicle only about 2,500 miles. He complained to the dealer again on December 16, 2015. Plaintiff's Second Amended Complaint also alleges that BMW knew of the excessive engine oil consumption as early as 2010, as of April 2013 BMW directed dealers to put more oil in engines during servicing, in December 2014 BMW launched a "Customer Care Package" that reduced oil change intervals, and as of July 2015 BMW instructed dealers not to open a repair order if a customer arrived with an "add engine oil" light displaying. Plaintiff further alleges that, when he complained of the oil consumption to the dealer, he was told it was normal.

According to Plaintiff, these facts support that BMW concealed the engine valve defect and that, despite due diligence, Plaintiff could not uncover the necessary facts to support his claim.

BMW argues that Plaintiff should have discovered the alleged engine valve defect no later than December 2015. According to BMW, Plaintiff had long known of the excess oil consumption and had been to the dealer twice to address the issue. BMW argues that, because a class action relating to the N63 engine valve defect was filed on September 18, 2015,[2] there was publicly available information regarding the alleged defect that Plaintiff could have found had he performed due diligence. BMW maintains these facts support that the alleged fraud should have been discovered no later than December 2015. The Complaint was filed on January 17, 2020—more than four years after the date on which BMW argues Plaintiff should have discovered the engine valve defect if he had performed due diligence. So, BMW maintains the statute of limitations bars Plaintiff's UDTPA claim.

At this juncture, the Court cannot conclude as a matter of law when Plaintiff should have discovered the engine valve defect had he performed due diligence. As already noted, Plaintiff twice visited the dealer regarding the engine oil consumption, and both times he was informed that the engine oil consumption was normal.[3] The question of what constitutes due diligence and when

---

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court is permitted to take judicial notice that *Bang v. BMW of N. Am., LLC*, No. 2:15-CV-6945, was filed on September 18, 2015 in the United States District Court for the District of New Jersey.

[3] In its reply, BMW raises for the first time the argument that Plaintiff has not sufficiently alleged the dealer in this case acted as an agent of BMW. Just as other courts have concluded, this Court finds such an argument unavailing. *See, e.g.*, *Jones v. BMW N. Am., Inc.*, No. 1:20-cv-00057-TDS-JEP, 2020 WL 5752808, at *2 n.1 (M.D.N.C. Sept. 25, 2020) (analyzing this issue under North Carolina law). An agency relationship depends on the degree of control the principal retains over the details of the agent's work as it is being performed. *Thomas v. Freeway Foods, Inc.*, 406 F. Supp. 2d 610, 617 (M.D.N.C. 2005). Plaintiff alleges facts supporting an agency relationship, including that: BMW sells BMW vehicles through a network of dealerships that act as agents with respect to warranty repairs; BMW controls the execution of warranty repairs by its dealers in providing training, materials, special tools, diagnostic software, and replacement parts; BMW demands that warranty repairs be performed in strict accordance with its repair guidelines; BMW pays its dealerships for warranty repairs; and BMW gave specific instructions to its dealerships in service information bulletins regarding the N63 engine valve defect. These facts are sufficient to support Plaintiff's allegation that the dealer was acting as BMW's agent.

Plaintiff should have discovered the underlying fraud supporting Plaintiff's UDTPA claim is not one the Court should decide in this Motion. Therefore, the Court finds that the statute of limitations does not bar Plaintiff's UDTPA claim at this time.

### 2. Particularity of Plaintiff's UDTPA Claim

The Court must still consider whether Plaintiff pled his UDTPA claim with the requisite particularity.[4] To set forth a UDTPA claim, a plaintiff must plead (1) "an unfair or deceptive act or practice"; (2) "in or affecting commerce"; (3) "which proximately caused injury to plaintiff." *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018). A fraud-based UDTPA claim is subject to the Rule 9(b) heightened pleading standard, which requires that the plaintiff describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451,455–56 (4th Cir. 2013) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)) (iterating this standard for a False Claims Act matter); *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 729 (M.D.N.C. 2015) (applying the same standard for a UDTPA claim). There are five elements of fraud, including: (1) "[f]alse representation or concealment of a material fact"; (2) "reasonably calculated to deceive"; (3) "made with intent to deceive"; (4) "which does in fact deceive"; (5) "resulting in damage to the injured party." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007) (quoting *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (1974)). Fraud also requires reasonable

---

[4] This section serves to set forth the law necessary for consideration of Plaintiff's fraud claim as well, which is considered below. The Court arranged its discussion in this manner because it must first explain why subject-matter jurisdiction exists and why the statute of limitations does not bar the fraud claim before properly analyzing whether the fraud claim was pled with the requisite particularity. However, the Court notes that analysis of Plaintiff's UDTPA and fraud claims is virtually identical for purposes of the Rule 12(b)(6) portion of this motion.

reliance on the false representations, which "is a question for the jury, unless the facts are so clear that they support only one conclusion." *Id.*

If fraud is based on failure to disclose a material fact, there must have been a duty to speak or the party accused of fraud must have taken steps to actively conceal facts. *See Setzer v. Old Republic Life Ins. Co.*, 126 S.E.2d 135, 137 (1962). A duty to speak exists where: (1) there is a fiduciary relationship between the parties; (2) "a party has taken affirmative steps to conceal material facts from the other"; or (3) "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Jacobson v. Walsh*, No. 10–CVS–9619, 2014 WL 266354, at \*6 (N.C. Super. Ct. Jan. 22, 2014) (quoting *Harton v. Harton*, 344 S.E.2d 117, 119 (1986)). To comply with the heightened Rule 9(b) requirements, a plaintiff will usually be required to allege:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

*Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997).

Here, the Court concludes that Plaintiff pled facts sufficient to support his UDTPA claim under the heightened Rule 9(b) standards, including: that BMW failed to disclose the alleged defect, despite numerous dates supporting that it knew of the defect long before Plaintiff purchased the Vehicle; when and how BMW instructed its dealers to make misrepresentations about the oil consumption level being normal; that BMW chose not to repair the defects in vehicles even though the warranty terms indicated the defects were covered; that BMW made these and other decisions due to the expense associated with repairing the defect; that Plaintiff's decision to purchase the

Vehicle was affected by BMW's failure to disclose such material facts; that the engine valve defect is not only dangerous but results in expensive repair costs; that the dealer, Hendricks BMW, affirmatively made misrepresentations to Plaintiff about the defects and the dates upon which it did so; and that Plaintiff's reliance on these misrepresentations resulted in thousands of dollars in damages to Plaintiff. Plaintiff has alleged sufficient facts to meet the pleading requirements for his UDTPA claim.

Still, BMW argues that Plaintiff's UDTPA claim is barred by the economic loss rule. "It is well settled in North Carolina that the economic loss rule prohibits recovery for purely economic loss in tort when a contract, an express warranty, or the Uniform Commercial Code operates to allocate risk." *Malone v. Tamko Roofing Prods. Inc.*, No. 3:13–cv-00089–MOC–DCK, 2013 WL 5561628, at *3 (W.D.N.C. Oct. 8, 2013). Under the economic loss rule, "a purchaser of an allegedly defective product is prohibited from bringing a negligence action against the product's manufacturer when the alleged damage is limited to the product itself." *Id.* The economic loss rule has been extended to bar UDTPA claims in cases with "allegations of a defective product where the only damage alleged is damage to the product itself and the allegations of unfair trade practices are intertwined with the breach of contract or warranty claims." *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006); *see also Wireless Comms., Inc. v. Epicor Software Corp.*, No. 3:10CV556–DSC, 2011 WL 90238, at *4 (W.D.N.C. Jan. 11, 2011) (dismissing a UDTPA claim where the facts alleged were intertwined with the breach of contract claim). However, the economic loss rule does not bar a claim where there is a duty, independent of a contractual duty, which arises by operation of law. *See Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 165 (4th Cir. 2018); *City of High Point v. Suez Treatment Sols. Inc.*, No. 1:19CV540, 2020 WL 1307017, at *5 (M.D.N.C. Mar. 19, 2020).

Again, Plaintiff has pled with sufficient particularity that BMW may have had a duty, independent of any contractual duty, to disclose information regarding the engine valve defect. Plaintiff alleges facts that relate to the inducement of the contract, including that: BMW knew the engine valve was defective long before Plaintiff purchased the Vehicle; BMW took steps before Plaintiff purchased the Vehicle to represent to customers that the engine oil consumption levels were normal; BMW took steps before Plaintiff purchased the Vehicle to conceal the engine valve defect from customers; Plaintiff was not aware of the defect prior to purchasing the Vehicle; knowledge of the defect would have impacted Plaintiff's decision to purchase the Vehicle; and Plaintiff had no ability to discover the defect through reasonable diligence. The economic loss rule should not bar Plaintiff's UDTPA claim at this time.

For all the reasons set forth herein, the Court concludes that Plaintiff's UDTPA claim should not be dismissed. Therefore, Plaintiff has also pled facts sufficient to support that the amount-in-controversy requirement for diversity jurisdiction is met. Because subject-matter jurisdiction exists, it is now appropriate to discuss the other claims addressed in BMW's Rule 12(b)(6) Motion.

### 3. Statute of Limitations on Plaintiff's Fraud and Warranty-Based Claims

BMW also asserts that Plaintiff's fraud and warranty-based claims are barred by the relevant statutes of limitations. A fraud claim is subject to a three-year statute of limitations, which accrues when the fraud is discovered or should have been discovered after the exercise of reasonable diligence. N.C. Gen. Stat. § 1-52(9); *Mountain Land Props., Inc.*, 46 F. Supp. 3d at 624. BMW argues that Plaintiff's fraud claim accrued no later than December 2015 and should have been filed no later than December 2018.

The applicable statute of limitations for Plaintiff's warranty-based claims is four years after the cause of action has accrued. N.C. Gen. Stat. § 25-2-725(1); *Ferro*, 731 F. App'x at 210 (explaining that the Magnuson-Moss Warranty Act does not contain a statute of limitations and courts are directed to use the applicable state law).

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

N.C. Gen. Stat. § 25-2-725(2). The discovery rule does not extend an express warranty's life beyond its terms. *Fairchild v. Kubota Tractor Corp.*, No. 1:18CV69, 2018 WL 4038126, at *5 (W.D.N.C. Aug. 23, 2018). BMW argues that this warranty is not a future performance warranty since it is a promise to repair for a period of six years or 100,000 miles following the original delivery to consumer. *See id.* As such, BMW maintains that the statute of limitations cannot extend to six years past the date of delivery, and the statute of limitations expired four years after the date of delivery. *See Petty v. Marvin Lumber & Cedar Co.*, 644 F. App'x 272, 273 (4th Cir. 2016) (noting that an agreement may reduce the statute of limitation to not less than one year but may not extend it to more than four years). Plaintiff does not dispute this portion of Defendant's argument. While there is no alleged delivery date, the alleged purchase date was August 3, 2015. So, according to Defendant, the expiration of the express warranty's statute of limitations should have occurred around August 3, 2019.

Nevertheless, Plaintiff contends that the statutes of limitations on these claims were tolled pursuant to either the fraudulent concealment tolling doctrine, the equitable tolling doctrine, or the class action tolling doctrine. For the fraudulent concealment doctrine to apply, a plaintiff must demonstrate: (1) "the party pleading the statute of limitations fraudulently concealed facts that are

the basis of the plaintiff's claim"; (2) "the plaintiff failed to discover those facts within the statutory period"; despite (3) "the exercise of due diligence." *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995). The doctrine of equitable tolling "applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987). To invoke equitable tolling, the plaintiff must show that "the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *Id.*[5]

The commencement of a class action lawsuit could also toll the applicable statute of limitations for members of the class who would be part of the suit. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983). In substantially similar cases to ours, courts have found that the class action tolling doctrine could apply and have refused to dismiss claims that might otherwise be barred by the applicable statute of limitations. *See, e.g.*, *Jones v. BMW of N. Am., LLC*, No. 1:20-CV-00057, 2020 WL 5752808, at *5–6 (M.D.N.C. Sept. 25, 2020); *see also Sarwar v. BMW of N. Am., LLC*, No. CV 18-16750, 2019 WL 7499157, at *3 (D.N.J. Nov. 27, 2019) (tolling the statute of limitations in Plaintiff's New Jersey case).[6]

---

[5] The parties rely on Fourth Circuit standards for the fraudulent concealment tolling doctrine and the equitable tolling doctrine. Interestingly, BMW does not contend that North Carolina standards should be applied to these doctrines, even though it contends in its reply that North Carolina standards should apply to the issue of class action tolling. For purposes of this motion, the Court relies on the Fourth Circuit standards set forth by the parties. *See Harrell v. BMW of N. Am., LLC*, No. 3:20-cv-00218-SAL, 2021 WL 409836, at *6 n.11 (D.S.C. Feb. 5, 2021) (recognizing the same disparities in that case and relying on Fourth Circuit caselaw since the parties had not argued the issues using state law). Without deciding the issue, the Court notes that North Carolina tolling standards may be more appropriately applied moving forward. *See id.* Nevertheless, the fraudulent concealment and equitable tolling doctrines exist under North Carolina law, and using North Carolina standards would not alter the Court's analysis in this motion. *See Friedland v. Gales*, 509 S.E.2d 793, 797 (N.C. Ct. App. 1998) (discussing fraudulent concealment tolling and equitable tolling).

[6] BMW argues for the first time in its reply that this case would involve cross-jurisdictional tolling if the class action tolling doctrine is applied and that North Carolina has not expressly decided whether to accept such tolling. *See Jones*, 2020 WL 5752808, at *5 n.5. BMW has presented no binding precedent that requires the Court to decide class action tolling cannot apply in this case. For purposes of this motion, the Court will accept the application of cross-

The Court concludes that Plaintiff has adequately pled facts to support that the statutes of limitations on his fraud and warranty-based claims were tolled by one of the above doctrines. Taking the facts in the Second Amended Complaint as true, Plaintiff has sufficiently pled that BMW knew of the alleged engine valve defect before Plaintiff ever purchased the Vehicle, BMW took affirmative actions to conceal the defect from customers, BMW refused to repair the defective parts despite its warranty to do so, and BMW did this because of the costs associated with repairing the defective parts. Plaintiff has also pled that he opted out of the *Bang* class action on August 10, 2018. As already noted, at this stage in the pleadings, it is not appropriate to decide whether Plaintiff performed his due diligence or reasonably relied on BMW's alleged actions. Based on these facts, Plaintiff has sufficiently pled facts to support that the statutes of limitations may be tolled under one of these doctrines, and BMW has failed to meet its burden to prove that the statutes of limitations bar Plaintiff's claims.

### 4. Particularity of Plaintiff's Fraud Claim

Defendant argues that Plaintiff's fraud claim should be dismissed for the same reasons that it argued the UDTPA claim should be dismissed, including that the fraud claim is not pled with the requisite particularity and is barred by the economic loss doctrine. For the same reasons set forth above in the Court's analysis of Plaintiff's UDTPA claim, Plaintiff's fraud claim should not be dismissed.

### 5. Particularity of Plaintiff's Warranty-Based Claims

BMW further argues that Plaintiff failed to allege reliance in support of his breach of express warranty claim. A claim for breach of express warranty under North Carolina law requires proof of: (1) "an express warranty as to a fact or promise relating to the goods"; (2) "which was

---

jurisdictional tolling, which is supported by the fact that North Carolina uses other equitable tolling doctrines, as discussed herein.

relied upon by the plaintiff in making his decision to purchase"; (3) "and that this express warranty was breached by the defendant." *Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Directors v. DJF Enters., Inc.*, 697 S.E.2d 439, 447 (2010). Construing the facts in Plaintiff's favor, Plaintiff sets forth allegations regarding BMW's warranty representations that it would repair defective parts, and he also sets forth facts concerning his receipt of the warranty and the circumstances surrounding the warranty, including that he relied on BMW's representations in the warranty that it would repair the vehicle's engine upon discovery of a defect in material or workmanship when he decided to purchase the Vehicle. Because Plaintiff has set forth facts sufficient to support a plausible claim for relief on the breach of express warranty claim, the Court will deny the motion to dismiss as to this matter. Accordingly, for all the reasons stated herein, the Court concludes that BMW's Motion should be denied.

## III.     ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF Doc. 25) is **DENIED**.

**SO ORDERED**.

Signed: September 15, 2021

Graham C. Mullen
United States District Judge